QUEACH CORPORATION ET AL. *v.* INLAND
WETLANDS COMMISSION OF THE TOWN
OF BRANFORD ET AL.
(SC 16486)

Sullivan, C. J., and Borden, Norcott, Palmer and Zarella, Js.

Argued June 1—officially released September 25, 2001

*Robert A. Fuller*, with whom was *Leo P. Carroll*, for the appellants (plaintiffs).

*Elizabeth P. Gilson,* for the appellee (named defendant).

*David H. Wrinn,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellee (defendant commissioner of environmental protection).

*Peter B. Cooper,* with whom was *Penny Anthopolos,* for the appellee (intervening defendant Connecticut Fund for the Environment, Inc.).

*Opinion*

NORCOTT, J. This appeal requires this court to address whether the regulatory amendments adopted by the named defendant inland wetlands commission of the town of Branford (commission) are valid under General Statutes §§ 22a-36[1] through

[1] General Statutes § 22a-36 provides: "The inland wetlands and watercourses of the state of Connecticut are an indispensable and irreplaceable but fragile natural resource with which the citizens of the state have been endowed. The wetlands and watercourses are an interrelated web of nature essential to an adequate supply of surface and underground water; to hydrological stability and control of flooding and erosion; to the recharging and purification of groundwater; and to the existence of many forms of animal, aquatic and plant life. Many inland wetlands and watercourses have been destroyed or are in danger of destruction because of unregulated use by reason of the deposition, filling or removal of material, the diversion or obstruction of water flow, the erection of structures and other uses, all of which have despoiled, polluted and eliminated wetlands and watercourses. Such unregulated activity has had, and will continue to have, a significant, adverse impact on the environment and ecology of the state of Connecticut and has and will continue to imperil the quality of the environment thus adversely affecting the ecological, scenic, historic and recreational values and benefits of the state for its citizens now and forever more. The preservation and protection of the wetlands and watercourses from random, unnecessary, undesirable and unregulated uses, disturbance or destruction is in the public interest and is essential to the health, welfare and safety of the citizens of the state. It is, therefore, the purpose of sections 22a-36 to 22a-45, inclusive, to protect the citizens of the state by making provisions for the protection, preservation, maintenance and use of the inland wetlands and watercourses by minimizing their disturbance and pollution; maintaining and improving water quality in accordance with the highest standards set by federal, state or local authority; preventing damage from erosion, turbidity or siltation;

22a-45[2] of the Connecticut Inland Wetlands and Watercourses Act (act). The plaintiffs, Queach Corporation and Vivian Vigliotti, appeal[3] from the decision of the trial court, *Blue, J.*, which held that the amended regulations implemented by the commission, the inland wetlands agency for the town of Branford (town),[4] were valid. The plaintiffs claim that the trial court improperly: (1) limited its decision to a facial review of the Branford inland wetlands and watercourses regulations (regulations); and (2) concluded that the regulatory amendments challenged by the plaintiffs were valid and in conformity with the act. We affirm the judgment of the trial court.

preventing loss of fish and other beneficial aquatic organisms, wildlife and vegetation and the destruction of the natural habitats thereof; deterring and inhibiting the danger of flood and pollution; protecting the quality of wetlands and watercourses for their conservation, economic, aesthetic, recreational and other public and private uses and values; and protecting the state's potable fresh water supplies from the dangers of drought, overdraft, pollution, misuse and mismanagement by providing an orderly process to balance the need for the economic growth of the state and the use of its land with the need to protect its environment and ecology in order to forever guarantee to the people of the state, the safety of such natural resources for their benefit and enjoyment and for the benefit and enjoyment of generations yet unborn."

[2] General Statutes § 22a-45 provides in relevant part: "Any owner of wetlands and watercourses who may be denied a license in connection with a regulated activity affecting such wetlands and watercourses, shall upon written application to the assessor, or board of assessors, of the municipality, be entitled to a revaluation of such property to reflect the fair market value thereof in light of the restriction placed upon it by the denial of such license or permit . . . ."

[3] The plaintiffs appealed, following a grant of certification to appeal by the Appellate Court; see General Statutes §§ 51-197b (e) and 8-8 (n) (no right to further review except to the Appellate Court by certification for review); from the judgment of the trial court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

[1] In addition to the commission, the town and the commissioner of environmental protection also were named as defendants in this case. Additionally, the Connecticut Fund for the Environment, Inc., pursuant to General Statutes § 22a-19 (a), was allowed to intervene as a defendant.

The following facts are relevant to the disposition of this appeal. The plaintiffs own abutting property in the town totaling approximately 205 acres of land. The plaintiffs' property contains fifty-five acres of wetlands, which constitutes 27 percent of the property. The plaintiffs jointly have been attempting to subdivide their land into residential lots. In February, 1999, the plaintiffs filed an application with the town planning and zoning commission for a special exception to construct a 150 unit subdivision on the two parcels of land.

In order to maximize the number of lots that could be imposed on the site, the plaintiffs proposed some major alterations to the property, including leveling some of the ridges by as much as fifty feet, significant grading, soil movement and stripping other lots of all vegetation. Because the proposed subdivision involved regulated activity that could affect the wetlands on the property, the planning and zoning commission referred the plaintiffs' application to the commission for review. The commission stated that its review would be advisory and would assist the planning and zoning commission in its assessment of the plaintiffs' subdivision proposal because the commission had no application before it.[5] By providing the planning and zoning commission with a written report examining the slope and area dimensions identified on the site plan, the commission was able to determine whether the proposed lots were consistent with its current regulations, which had been revised as of January, 1998. The regulations in effect at the time of this review required the commission to review all activity occurring within fifty feet of a wetland or watercourse, and "any other activity" located "in any other non-wetland or non-watercourse

[5] Although the commission was not holding a formal, public hearing with the intent to reach a decision on the merits, we note that the plaintiffs were recognized as an intervenor in the wetlands review process, with the right to express opinions during the process.

area [that] is likely to impact or affect wetlands or watercourses . . . ." Branford Inland Wetlands and Watercourses Regs., § 2.1jj (2). The commission's advisory report determined that seventy-two of the lots on the plaintiffs' site plan were potentially nonconforming, largely because of heavy grading and other activity proposed on the slopes. None of the seventy-two lots, however, was determined to be potentially nonconforming because the proposed development would occur within the fifty foot buffer zone.[6] Ultimately, the planning and zoning commission denied the plaintiffs' preliminary application, not because of wetlands issues, but for reasons relating to excessive density.[7]

In addressing this appeal, it is important to understand the process by which the regulations of the town were amended. In 1995 and 1996, the state legislature had amended the act to provide express authority for municipal agencies to regulate areas that extended beyond designated wetland boundaries. See Public Acts 1995, No. 95-383; Public Acts 1996, No. 96-157. In January, 1998, and again in July, 1999, the commission adopted a number of amendments to the regulations of the town. The revisions that the commission adopted were designed to conform to the legislature's changes to the act. In order to conform with these changes, municipal agencies were advised by the state to revise their regulations using models developed by the department of environmental protection (department).[8] After

---

[6] We note that the commission was unable to review road crossings into the subdivision for potential wetlands impact because the preliminary site plan did not indicate clearly where the roads might be placed.

[7] This decision subsequently was appealed from, and the appeal was dismissed by the trial court after a full hearing. *Queach Corp.* v. *Planning & Zoning Commission*, Superior Court, judicial district of New Haven, Docket No. 430746 (June 30, 2000).

[8] In order to assist municipalities in defining what areas and activities were subject to commission review and regulation, the wetlands management section of the department's bureau of water management, in June, 1997, issued a document entitled "Guidelines for Upland Review Area Regulations Under Connecticut's Inland Wetlands and Watercourses Act."

reviewing the town's revisions submitted on January 23, 1998, the chief of the department's bureau of water management issued a letter to the town that provided specific recommendations for further revisions in order to conform to §§ 22a-36 through 22a-45. Most of the recommendations were incorporated into the town's regulations and, after a full hearing, were adopted on July 29, 1999.

Thereafter, the plaintiffs, pursuant to General Statutes § 22a-43 (a),[9] filed this present appeal in the trial court, contesting the validity of two of the amendments to the regulations. In their complaint, the plaintiffs alleged that the revisions by the commission, in July, 1999, to the town's regulations exceeded its statutory authority to regulate. The plaintiffs claimed that they

[9] General Statutes § 22a-43 (a) provides: "The commissioner or any person aggrieved by any regulation, order, decision or action made pursuant to sections 22a-36 to 22a-45, inclusive, by the commissioner, district or municipality or any person owning or occupying land which abuts any portion of land or is within a radius of ninety feet of the wetland or watercourse involved in any regulation, order, decision or action made pursuant to said sections may, within the time specified in subsection (b) of section 8-8 from the publication of such regulation, order, decision or action, appeal to the superior court for the judicial district where the land affected is located, and if located in more than one judicial district to the court in any such judicial district. Such appeal shall be made returnable to said court in the same manner as that prescribed for civil actions brought to said court, except that the record shall be transmitted to the court within the time specified in subsection (h) of section 8-8. If the inland wetlands agency or its agent does not provide a transcript of the stenographic or the sound recording of a meeting where the inland wetlands agency or its agent deliberates or makes a decision on a permit for which a public hearing was held, a certified, true and accurate transcript of a stenographic or sound recording of the meeting prepared by or on behalf of the applicant or any other party shall be admissible as part of the record. Notice of such appeal shall be served upon the inland wetlands agency and the commissioner. The commissioner may appear as a party to any action brought by any other person within thirty days from the date such appeal is returned to the court. The appeal shall state the reasons upon which it is predicated and shall not stay proceedings on the regulation, order, decision or action, but the court may on application and after notice grant a restraining order. Such appeal shall have precedence in the order of trial."

were aggrieved both statutorily and classically, because the amended regulations in general, and the definition of regulated activity in particular, would result in the regulation of the plaintiffs' land outside of wetlands and watercourses, and significantly would restrict its development.[10] In particular, the plaintiffs challenged the validity of §§ 2.1jj[11] and 2.1oo (5)[12] of the regulations. From these provisions, the plaintiffs specifically contested: (1) the definition of regulated activity; (2) the increase from 50 to 100 feet for the upland review buffer

[10] The plaintiffs have never applied for or been denied a wetlands permit for the proposed subdivision.

[11] Section 2.1jj of the town regulations defines regulated activities that are subject to commission review as follows: " 'Regulated activity' means any operation within or use of a wetland or watercourse involving removal or deposition of material, or any obstruction, construction, alteration or pollution of such a wetland or watercourse, but shall not include the activities specified in section 4 of these regulations. [Section 4 specifies permitted uses as of right and nonregulated uses.] Furthermore any clearing, grubbing, filling, grading, paving, excavating, constructing, depositing or removing of material and discharging of storm water in the following areas is a regulated activity:

"(1) on land within 100 feet measured horizontally from the boundary of any wetland or watercourse, provided

"(2) The Agency may rule that any other activity located within such upland review area or in any other non-wetland or non-watercourse area is likely to impact or affect wetlands or watercourses and is a regulated activity."

[12] Section 2.1oo of the town regulations provides in relevant part: " 'Significant activity' means any activity including, but not limited to, the following activities which may have a substantial effect on the area for which an application has been filed, or any other part of the wetland [or] watercourse system . . .

"(3) Any activity which substantially diminishes the natural capacity of the inland wetland or watercourse to support fisheries, wildlife, or other biological life, prevent flooding, supply water, assimilate waste, facilitate drainage, provide recreation open space or other functions, or . . .

"(5) Any activity which causes a substantial diminution of flow of a natural watercourse, or groundwater levels of the regulated area, or . . .

"(7) Any activity which creates conditions of an inland wetland or watercourse which may adversely affect the health, welfare, and safety of any individual of the community, or

"(8) Any activity which destroys unique wetland or watercourse areas having a demonstrable scientific, educational or ecological value. . . ."

area; (3) the requirement to provide alternatives for nonregulated activities and construction in the buffer area; (4) the discretion that the commission has to regulate activities occurring outside the wetland areas; and (5) the authority that the commission has to regulate groundwater levels.[13] At trial, the Connecticut Fund for the Environment, Inc., intervened, pursuant to General Statutes § 22a-19.[14]

After trial, the court held that, as owners of land within 100 feet of land affected by the amended regulations, the plaintiffs were statutorily aggrieved pursuant to General Statutes § 8-8 (a) (1) and (b),[15] and had stand-

[13] The only language in § 2.1jj of the regulations that changed from the revision in January, 1998, to July, 1999, was that the upland review area distance was expanded from 50 to 100 feet. The other provisions of § 2.1jj, which the plaintiffs dispute, were adopted in January, 1998. We note that, although the plaintiffs were in possession of their property in 1998, they did not file an appeal at the time the challenged provisions were adopted in 1998.

[14] General Statutes § 22a-19 provides: "(a) In any administrative, licensing or other proceeding, and in any judicial review thereof made available by law, the Attorney General, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state.

"(b) In any administrative, licensing or other proceeding, the agency shall consider the alleged unreasonable pollution, impairment or destruction of the public trust in the air, water or other natural resources of the state and no conduct shall be authorized or approved which does, or is reasonably likely to, have such effect so long as, considering all relevant surrounding circumstances and factors, there is a feasible and prudent alternative consistent with the reasonable requirements of the public health, safety and welfare."

[15] General Statutes § 8-8 provides in relevant part: "(a) As used in this section:

"(1) 'Aggrieved person' means a person aggrieved by a decision of a board and includes any officer, department, board or bureau of the municipality charged with enforcement of any order, requirement or decision of the board. In the case of a decision by a zoning commission, planning commis-

ing to bring a facial challenge on that basis. Because the plaintiffs had never submitted an application subject to the amended regulations, however, the trial court declined to determine whether the amendments were valid as applied.[16] Thereafter, the trial court examined and rejected each challenge to the amendments and held that the regulations in question were facially valid. In doing so, it held that the commission properly acted within the scope of its authority.[17] Accordingly, the trial

sion, combined planning and zoning commission or zoning board of appeals, 'aggrieved person' includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board. . . .

"(b) Except as provided in subsections (c), (d) and (q) of this section and sections 7-147 and 7-147i, any person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located. The appeal shall be commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes. The appeal shall be returned to court in the same manner and within the same period of time as prescribed for civil actions brought to that court."

Although the legislature has made technical changes to § 8-8 since 1999, the date that the town regulations were amended, the statute remains substantially the same. References in this opinion to § 8-8 are to the current revision of that statute.

[16] The trial court stated: "It should be kept in mind, however, that the appeal only challenges the facial validity of the amendments in question and that the question of whether the amendments are valid as applied must be reserved for future cases in which adverse decisions applying those amendments are presented to the court."

[17] Specifically, the trial court noted that the cases construing the act "emphatically hold that the statutory term 'regulated activity' is to be broadly construed as applying to activity that occurs in nonwetlands areas that affects wetlands." Relying on the wealth of previous case law supporting the municipal regulation of activities affecting scarce wetlands, the trial court determined that "it cannot be held that [the commission's definition of regulated activity] is invalid because of its breadth." The trial court rejected as "unpersuasive" the plaintiffs' argument that the 100 foot buffer established by § 2.1jj (1) of the regulations was not supported by evidence in the record. Similarly, the trial court rejected the plaintiffs' claim that the commission lacked authority to regulate groundwater provisions under § 2.1oo (5) of the regulations, stating that the regulation "is consistent with the broad construction given the [act] by our Supreme Court." Finally, the

court rendered judgment dismissing the plaintiffs' appeal. This appeal followed.

Although the parties articulate the issues somewhat differently, the plaintiffs' challenges to the commission's authority primarily are grounded on the claim that the commission, in asserting its regulatory posture, has either exceeded its statutory authority in certain instances or has acted on matters specifically exempted from its jurisdiction.[18] These issues, however, may be organized into two categories: (1) whether the trial court properly limited its decision to a facial review of

trial court found that the provision requiring an applicant to list alternatives to the proposed development, which the plaintiffs challenged, was "reasonable and consistent with the broad legislative mandate given the commission."

[18] The plaintiffs set forth the following issues on appeal: "(1) Where under the facts of this case the plaintiffs were adversely affected by amendments to the inland wetlands regulations and had standing to challenge whether they exceeded the commission's statutory authority, whether more than facial review of the amendments was required.

"(2) Whether an inland wetlands agency can enact regulations which regulate actions or activities which are not within the statutory definition of regulated activities in section 22a-38 (13) of the General Statutes.

"(3) Whether an inland wetlands agency can enact regulations defining as a regulated activity conduct or activities outside of but within 100 feet of a wetland or watercourse, when the proposed use of the land is not likely to impact or affect inland wetlands or watercourses, and whether such regulations violate section 22a-42a (f) of the General Statutes.

"(4) Whether inland wetlands regulations can have a buffer or upland review area without a specific or stated distance provision and without any standards or geographical limitation on the discretion of the inland wetlands agency as to whether an activity in the buffer area is subject to regulation, and whether such a regulation violates section 22a-42a (f) of the General Statutes.

"(5) Whether an inland wetlands agency can require an applicant to present alternatives to proposed construction in a buffer or upland review area when there are no proposed regulated activities as defined by statute which have any effect on wetlands and watercourses.

"(6) Whether an inland wetlands agency has jurisdiction to regulate wells and groundwater.

"(7) Whether a motion to intervene under section 22a-19 of the General Statutes should have been granted when the plaintiffs' appeal only concerned amendments to the inland wetlands regulations initiated by the defendant commission, and did not concern any proposal to develop land."

the regulations; and (2) whether the trial court properly concluded that the regulatory amendments challenged by the plaintiffs were facially valid and in conformity with the enabling act.[19] We conclude that the trial court properly limited its decision to a facial review, and properly determined that the amendments were valid. Accordingly, we affirm the judgment of the trial court.

I

The plaintiffs first claim that the trial court improperly limited its review of the regulations to a facial review. They argue that they are classically aggrieved because the "challenged regulations will be applied against the plaintiff[s] and, consequently, it is not necessary to wait until the plaintiffs file another subdivision application" because the regulations are "likely to be interpreted to bar construction within 100 feet of a wetlands or watercourse . . . ." The plaintiffs claim, therefore, that the trial court was required to decide whether the regulations were valid, as applied to their particular development. We disagree.

The plaintiffs' argument confuses the issue of whether they had standing to challenge the regulations with whether the trial court properly limited its analysis of the regulations to a facial review. The trial court found, pursuant to § 8-8 (a) (1) and (b), that the plaintiffs were statutorily aggrieved as owners of land containing substantial areas of wetlands. Because subject

---

[19] In their petition for certification to appeal to the Appellate Court, the plaintiffs failed to raise the issue of whether the trial court properly permitted the Connecticut Fund for the Environment, Inc., to intervene pursuant to § 22a-19 (a). Accordingly, we decline to review this issue. See Practice Book § 84-9 ("[t]he issues which the appellant may present are limited to those raised in the petition for certification, except where the issues are further limited by the order granting certification"); *Appleton* v. *Board of Education*, 254 Conn. 205, 213, 757 A.2d 1059 (2000) ("[t]he only questions that we need consider are those squarely raised by the petition for certification"); *State* v. *Torrence*, 196 Conn. 430, 433, 493 A.2d 865 (1985) (same).

matter jurisdiction was conferred by statute, the trial court did not consider or need to consider the plaintiffs' claim that they were classically aggrieved. Thereafter, the trial court properly characterized the plaintiffs' appeal as an attack upon the "facial validity" of the commission's regulatory amendments, stating that "the plaintiffs do not allege that the commission has taken any adverse action with respect to them based on these amendments."[20] The trial court noted that the question of whether the regulations are valid as applied to a particular party "must be reserved for future cases in which adverse decisions applying those amendments are presented to the court." We conclude that the trial court's conclusions were proper.

Similar to statutes, regulations do not exist in a vacuum. *State* v. *Floyd*, 217 Conn. 73, 78, 584 A.2d 1157 (1991); *Motor Vehicle Manufacturers Assn. of the United States, Inc.* v. *O'Neill*, 203 Conn. 63, 75, 523 A.2d 486 (1987). Trial courts are not required to make predictions about how a commission may one day apply amended regulations to a potential claimant. In order to meet its burden, a party seeking to invalidate a regulation is required to present sufficient facts to the court that demonstrate the regulation's adverse impact on some protected interest of its own, in its own particular case, and not merely under some hypothetical set of facts as yet unproven.

The plaintiffs' reliance on *Bombero* v. *Planning & Zoning Commission*, 40 Conn. App. 75, 669 A.2d 598 (1996), for the proposition that the trial court should

---

[20] The plaintiffs' complaint alleged that the commission proposed and adopted certain amendments to its regulations. Specifically, the complaint alleged that "[t]he plaintiffs are aggrieved by amendment to the regulations both statutorily and classically in that they own substantial amounts of land which abut or contain wetland[s] or [watercourses] and will be adversely affected by the definitions enacted by the [commission], which will result in regulation of the plaintiffs' land outside of wetlands and [watercourses]."

have agreed to perform an "as applied" review of the plaintiffs' challenge to the commission's legislative act in amending its regulations, is misplaced. In *Bombero*, the plaintiff challenged the newly amended regulations as unconstitutionally vague. Id., 76. The issue before the Appellate Court, was whether, in the absence of statutory aggrievement, the plaintiff had standing to bring a general challenge to the town's regulations. The Appellate Court concluded that the plaintiff had demonstrated sufficient adverse impact upon his property by alleging that the zoning regulation at issue was constitutionally vague and, therefore, the plaintiff could not ascertain whether he would be able to subdivide his property in accordance with the provisions of the regulation. Id., 87. The court concluded that an owner of property with the potential of subdivision is entitled to be able to ascertain with reasonable certainty the validity of the adopted regulation and its effect on his rights as a property owner. Id., 87–88.

In the present case, the plaintiffs are *not* making a constitutional challenge to the regulations. Rather, the plaintiffs argue that the regulations go beyond the scope of the commission's authority under the act, and that their property, which contains wetlands, will be affected. This argument was the basis upon which the trial court determined that the plaintiffs were statutorily aggrieved and granted them standing. Because this appeal came to the trial court solely in the context of an appeal from the enactment of the regulations and the amendments to the regulations, the record is devoid of a sufficient factual basis on which to evaluate the alleged effect of the regulations as applied to the plaintiffs. In particular, the plaintiffs had not filed an application with the commission that was before the trial court, and the regulations were not applied to an actual proposal submitted for approval. The commission, therefore, did not have an opportunity or the responsibility to

deny a specific application submitted by the plaintiffs. Also, the record does not support the plaintiffs' assertion that the 100 foot buffer zone would automatically and prospectively be applied to reduce the number of possible building sites on their land from 143 to 82.[21] The "[r]ejection of exceedingly grandiose development plans does not logically imply that less ambitious plans will receive similarly unfavorable reviews." (Internal quotation marks omitted.) *Gil* v. *Inland Wetlands & Watercourses Agency*, 219 Conn. 404, 417, 593 A.2d 1368 (1991). The trial court, therefore, properly limited its review. See *D & J Quarry Products, Inc.* v. *Planning & Zoning Commission*, 217 Conn. 447, 450, 585 A.2d 1227 (1991) (where only issue before trial court was general validity of amendments to town's regulations, trial court properly limited determination to general validity of amendments due to absence of factual record). Accordingly, we conclude that the trial court properly limited its review to the facial validity of the regulations.

## II

Having concluded that the trial court properly limited its review to the plaintiffs' facial challenge to the regulations, we next consider the merits of that challenge. The plaintiffs attack the validity of the commission's regulatory amendments based primarily upon two sections of the enabling legislation, namely, General Statutes § 22a-38 (13), which defines " '[r]egulated activity,' " and General Statutes § 22a-42a (f), which

---

[21] The trial court was not required to hypothesize what aspect of the plaintiffs' proposal may have been considered valid under the act and the commission's regulations, as amended. The allegation by the plaintiffs that land *will be* subject to regulation outside of wetlands and watercourses lacks specificity. In fact, by claiming that they possess wetlands on their property, and by further asserting that, under the fifty foot setback, no development was proposed in that area, the plaintiffs appear to be attaching a facial challenge to a claim that this court is required to review a proposal that never was actually before the commission. We need not undertake such review.

confirms the authority of a municipal wetlands commission to regulate outside the boundaries of the wetlands and watercourses themselves. The plaintiffs claim that the adopted regulatory amendments, in particular, §§ 2.1jj and 2.1oo (5), are in conflict with the language of the act. In response, the defendants claim that the regulations are valid because they are within the scope of the authority given a local agency by statute to adopt regulations in order to carry out the purposes of the act, as well as within the guidelines for agency rulemaking as set forth in *Page* v. *Welfare Commissioner*, 170 Conn. 258, 266, 365 A.2d 1118 (1976).[22] In taking this position, the defendants maintain that these regulations do not conflict with, but rather, are in conformity with, the act. We agree with the defendants.

"In evaluating the plaintiffs' claims, we are mindful that the [act] rests upon a specific legislative finding that [t]he inland wetlands and watercourses of the state of Connecticut are an indispensable and irreplaceable but fragile natural resource with which the citizens of the state have been endowed, and that [t]he preservation and protection of the wetlands and watercourses from random, unnecessary, undesirable and unregulated uses, disturbance or destruction is in the public interest and is essential to the health, welfare and safety of the citizens of the state. General Statutes § 22a-36. Accordingly, the broad legislative objectives underlying the [act] are in part to protect the citizens of the state by making provisions for the protection, preservation, maintenance and use of the inland wetlands and watercourses by minimizing their disturbance and pollution . . . [and by] protecting the state's potable fresh water supplies from the dangers of drought, overdraft, pollu-

---

[22] In *Page* v. *Welfare Commissioner*, supra, 170 Conn. 262, we held that "[a]n administrative agency, in making rules and regulations, must act within its statutory authority, within constitutional limitations, and in a lawful and reasonable manner."

tion, misuse and mismanagement by providing an orderly process to balance the need for the economic growth of the state and the use of its land with the need to protect its environment and ecology in order to forever guarantee to the people of the state, the safety of such natural resources for their benefit and enjoyment [and for the benefit and enjoyment] of generations yet unborn. General Statutes § 22a-36.

"In order to accomplish these objectives, it is the public policy of the state to require municipal regulation of activities affecting the wetlands and watercourses within the territorial limits of the various municipalities or districts. General Statutes § 22a-42 (a). The designated wetlands agency of each municipality is expressly authorized to promulgate regulations that are necessary to protect the wetlands and watercourses within its territorial limits. General Statutes § 22a-42 (c). A regulation deemed necessary by a wetlands agency is not inconsistent with the [act] so long as it is reasonably designed to effectuate the stated purposes of the wetlands statutes. *Cioffoletti* v. *Planning & Zoning Commission*, 209 Conn. 544, 561, 552 A.2d 796 (1989) [overruled on other grounds, 220 Conn. 362, 599 A.2d 9 (1991)]. The [act] envisages its adaptation to infinitely variable conditions for the effectuation of the purposes of these statutes. *Aaron* v. *Conservation Commission*, 183 Conn. 532, 541, 441 A.2d 30 (1981).

"While the necessity for protecting wetlands must be balanced against the productive use of privately owned land; *Red Hill Coalition, Inc.* v. *Conservation Commission*, 212 Conn. 710, 719, 563 A.2d 1339 (1989); we have also indicated that this balancing process is more appropriately conducted in a legislative rather than a judicial setting. *Lizotte* v. *Conservation Commission*, 216 Conn. 320, 336, 579 A.2d 1044 (1990). As a consequence, the commission is vested with a large measure of discretion, and the burden of showing that the agency

has acted improperly rests upon the one who asserts it. Id., 336–37, quoting *Aaron* v. *Conservation Commission,* supra, [183 Conn.] 537. Every intendment is to be made in favor of the validity of the ordinance, and it is the duty of the court to sustain the ordinance unless its invalidity is established beyond a reasonable doubt. *Connecticut Theatrical Corporation* v. *New Britain,* 147 Conn. 546, 553, 163 A.2d 548 (1960); see *Lizotte* v. *Conservation Commission,* supra, 337; *Aaron* v. *Conservation Commission,* supra [537]." (Internal quotation marks omitted.) *Mario* v. *Fairfield,* 217 Conn. 164, 168–69, 585 A.2d 87 (1991).

A

First, the plaintiffs claim that § 2.1jj of the regulations impermissibly expands the definition of " '[r]egulated activity' " beyond the enumerated activities stated in § 22a-38 (13) of the act. Specifically, § 2.1jj of the regulations provides: "Furthermore any clearing, grubbing, filling, grading, paving, excavating, constructing, depositing or removing of material and discharging of storm water in the following areas is a regulated activity . . . ." The plaintiffs argue that, not only would this allow local agencies to regulate activities that would not likely impact or affect inland wetlands or watercourses, but that "[t]he clearing of land, grubbing and construction of structures go beyond the activities in the statutory definition even if conducted within wetlands." The defendants argue that the activities identified in § 2.1jj are not in conflict with the statutory definition and that the trial court properly recognized the listed activities as merely an itemization of specific activities that can be regulated under the act rather than as an expansion of the act. We agree with the defendants.

The act defines " '[r]egulated activity' " broadly, including "*any* operation . . . involving removal or deposition of material, or *any* obstruction, construc-

tion, alteration or pollution . . . ." (Emphasis added.) General Statutes § 22a-38 (13). We note that the act also defines " '[d]eposit' " as "includes, but shall not be limited to, fill, grade, dump, place, discharge or emit"; General Statutes § 22a-38 (12); and defines " '[r]emove,' " as "includes, but shall not be limited to drain, excavate, mine, dig, dredge, suck, bulldoze, dragline or blast . . . ." General Statutes § 22a-38 (11). Thus, given that the act authorizes wetlands commissions to legislate broadly and that the act's own definition of " '[r]egulated activity' " is not restrictive, we conclude that § 2.1jj of the regulations does not facially conflict with the statutory scheme.

We also note that, as the plaintiffs concede, a wetlands commission is not required to use the exact language set forth by the act when adopting regulations, so long as the additional language is in conformity with the act's purposes and goals. The regulation in question in the present case, § 2.1jj, however, also employs several terms used in the act, including "excavate," "construct," "grade" and "fill." Furthermore, the terms "remove" and "deposit" are already expressly defined without limitation in the act. The remaining terms, namely, "clearing," "grubbing" and "paving," clearly involve the removal or deposit of material as defined by the act. Accordingly, we conclude that the trial court properly determined that this definition was merely an itemization of specific activities and that the regulation conforms with the act.

B

The plaintiffs also argue that § 2.1jj of the regulations violates the 1996 amendment to the act, which was codified at General Statutes § 22a-42a (f). Section 22a-42a (f) provides: "If a municipal inland wetlands agency regulates activities within areas around wetlands or watercourses, such regulation shall (1) be in accor-

dance with the provisions of the inland wetlands regulations adopted by such agency related to application for, and approval of, activities to be conducted in wetlands or watercourses and (2) apply only to those activities which are likely to impact or affect wetlands or watercourses." The plaintiffs contend that the activities referred to in § 22a-42a (f) actually refer to " '[r]egulated activities' " as defined by the act and, therefore, § 2.1jj of the regulations illegally encompasses activities that are not "likely to impact or affect wetlands or watercourses." The plaintiffs contend, therefore, that § 22a-42a (f) effectively supersedes our decisions in *Mario, Lizotte, Cioffoletti* and *Aaron*, which held that activity that occurs in nonwetland areas, but that affects wetland areas, falls within the scope of regulated activity. The plaintiffs also argue that § 2.1jj (2) of the regulations is in violation § 22a-42a (f) because it lacks a standard and allows a commission unfettered discretion to regulate activities even outside of the wetlands areas or upland review areas. We disagree, and conclude that the plaintiffs' interpretation of § 22a-42a (f) and § 2.1jj (2) of the regulations conflicts with the broad legislative purpose of the act, which, we note, was not amended in 1996.

We briefly address § 22a-42a (f). Section 22a-42a (f) provides that a wetlands agency may regulate activities outside of the wetlands areas, "[i]f a municipal inland wetlands agency regulates activities within areas around wetlands or watercourses" *and* "those activities . . . are likely to impact or affect wetlands or watercourses." This statutory language effectively codifies our previous statement in the seminal case of *Aaron* v. *Conservation Commission,* supra, 183 Conn. 542, wherein we emphasized that "[a]n examination of the act reveals that one of its major considerations is the environmental impact of proposed activity on wetlands and water courses, which may, in some instances, come

from outside the physical boundaries of a wetland or water course." In *Aaron*, we held that activity that occurs in nonwetlands areas, but that affects wetlands areas, falls within the scope of regulated activity. Id. We also have emphasized this principle in more recent decisions. See *Mario* v. *Fairfield*, supra, 217 Conn. 171 ("[t]he commission could reasonably have determined that the construction activity inevitably accompanying the erection of a structure, albeit on the nonwetland portion of a parcel of land containing wetlands, could pose a significant threat to the environmental stability of the nearby wetlands"); *Cioffoletti* v. *Planning & Zoning Commission*, supra, 209 Conn. 558 ("the defendant in this case acted within its authority in regulating mining and excavation in areas adjacent to the inland wetlands because there was evidence that these activities would adversely affect wetlands areas"). Thus, we reject the plaintiffs' claim that § 22a-42a (f) was designed to overrule our prior case law in this area.

Moreover, we also conclude that § 2.1jj (2) of the regulations does not facially conflict with § 22a-42a (f). Section 2.1jj (2) of the regulations provides: "The [a]gency may rule that any other activity located within such upland review area or in any other non-wetland or non-watercourse area is likely to impact or affect wetlands or watercourses and is a regulated activity." Contrary to the plaintiffs' claim, the standard for reviewing regulated activities is set forth in § 22a-42a (f) as well as in § 2.1jj of the regulations: if the activity is a " '[r]egulated activity,' " and if it is "likely to impact or affect wetlands or watercourses," then the agency may make a determination.[23] The act allows a wetlands

---

[23] We note that proposed activities in or near wetlands or watercourses would come before the commission through an application by a developer. If the developer proposes regulated activity outside the boundaries of the established upland review area, and if that activity, such as extensive earth movement, is likely to impact the wetlands, then regulation of that activity also may be appropriate under the same test used for activity outside of the wetlands but within the 100 foot setback area.

commission enough flexibility to adapt "to infinitely variable conditions for the effectuation of the purposes of these statutes."[24] *Aaron* v. *Conservation Commission*, supra, 183 Conn. 541; see also *Mario* v. *Fairfield*, supra, 217 Conn. 168. Thus, we conclude that § 2.1jj (2) of the regulations is in conformity with § 22a-42a (f).

## C

The plaintiffs next claim that the commission's change from a fifty foot upland review buffer area to a 100 foot upland review area in § 2.1jj (1) of the regulations is invalid. In particular, the plaintiffs argue that this amendment to the regulations allows the commission to prohibit all construction in the 100 foot buffer area without considering any actual or likely impact. The plaintiffs also claim that the commission did not have sufficient evidence in the record to increase the upland review area to 100 feet. We disagree with these claims.

In opposing the increased upland review area, the plaintiffs confuse the commission's authority to *regulate* activity with the commission's authority to *prohibit* activity. Contrary to the plaintiffs' claim, the upland review process does not forbid activity based solely on proximity to wetlands. Rather, the upland review process merely provides a basis for determining whether activities will have an adverse *impact* on the adjacent wetland or watercourse, and if necessary, regulating them. Regulated activities, even within the 100 foot buffer area, may be approved by the commission under certain circumstances. For example, the commis-

---

[24] The Guidelines for Upland Review Area Regulations Under Connecticut's Inland Wetlands and Watercourses Act, which were drafted by the department, clarify the need for such a provision: "While requiring a permit for specified activities within defined upland review area boundaries, these wetland agencies still maintain their authority to regulate proposed activities located in more distant upland areas if they find that the activities are likely to impact or affect a wetland or watercourse."

sion could issue a permit, pursuant to General Statutes § 22a-41 (b), for a regulated activity where a public hearing has been held and there is no feasible and prudent alternative. Also, if the applicant can demonstrate that there will not be a negative impact on the wetlands or watercourses, the proposal may well be approved. Thus, the change in the upland review area does not bar every proposed activity within the 100 foot upland review area.

Moreover, this type of regulatory oversight embodied by the amendment from a 50 to 100 foot upland review area is reasonable and consistent with the authority of a wetlands commission. In *Mario* v. *Fairfield*, supra, 217 Conn. 171, the plaintiffs challenged the validity of a regulation requiring owners of property partially within wetland boundaries to apply for permission before erecting a structure on the nonwetlands portion of the parcel. We held that the building on the nonwetland portion of the property could pose a significant threat to the environmental stability of the wetland and, therefore, the municipal agency did not exceed its authority in requiring a permit for construction. Id., 170–71. In recognizing that a commission may assess whether activities have an adverse impact, we stated: "In view of the potential hazards associated with the erection of a structure in proximity to wetlands, the commission could reasonably have concluded that regardless of whether such activity may or may not adversely affect wetlands in a particular instance, it was administratively necessary for its approval to be required before any such activity could go forward. . . . The commission might otherwise remain unaware of construction activity destructive to wetlands until the wetlands were damaged beyond repair." (Citations omitted.) Id., 171–72; see also *Lizotte* v. *Conservation Commission*, supra, 216 Conn. 337; *Aaron* v. *Conservation Commission*, supra, 183 Conn. 547.

Similar to those previous cases, in the present case, we recognize that it is administratively reasonable for activity that presents a potential hazard to the wetlands or watercourses to be subject to review and, if necessary, regulation. Establishing an upland review of 100 feet, therefore, does not automatically prevent or bar development as the plaintiffs contend, but provides the commission with a trigger for reviewing whether activity is likely to affect the wetlands or watercourses. Thus, we conclude that the 100 foot upland review area imposed by the regulation is "a valid administrative device reasonably designed to enable the commission to protect and preserve the wetlands located within [Branford], in fulfillment of its duty under the [act]." *Mario* v. *Fairfield*, supra, 217 Conn. 172; accord *Lizotte* v. *Conservation Commission*, supra, 216 Conn. 337; *Cioffoletti* v. *Planning & Zoning Commission*, supra, 209 Conn. 561.

The plaintiffs' claim that there is not substantial evidence in the administrative record to support the commission's adoption of the 100 foot upland review area is without merit and warrants little discussion. We note that the department Guidelines for Upland Review Area Regulations Under Connecticut's Inland Wetlands and Watercourses Act,[25] the testimony before the commission, and the broad purpose of the act, provided ample evidence for the commission to approve the 100 foot

---

[25] We note that the department Guidelines for Upland Review Area Regulations Under Connecticut's Inland Wetlands and Watercourses Act set forth a detailed explanation regarding the reasonableness of a 100 foot setback. In particular, the guidelines provide in relevant part: "The [department] believes that a 100 foot-wide upland review area is sufficient for reviewing construction activities in areas surrounding wetlands or watercourses because most of the activities which are likely to impact or affect these resources will be located in that area. . . ." The guidelines also state that inland wetlands and watercourses agencies in Connecticut have upland review areas ranging from 25 feet to 650 feet from wetland and watercourse boundaries.

setback. Accordingly, we agree with the trial court that the 100 foot buffer cannot be said to be without support in the evidence.

## D

The plaintiffs next argue that §§ 7.4f and 10.3[26] of the regulations are facially invalid because they have the effect of requiring an applicant to submit alternatives to the commission even if the proposed use of the property does not have any affect or impact upon wetlands or watercourses. The plaintiffs claim that alternatives only need to be established to the extent that the proposed development affects or impacts wetlands and watercourses. Thus, the plaintiffs contend the commission's regulations regarding alternatives are invalid because they require alternatives to be submitted even for activities that are solely within the buffer or upland review areas but do not impact wetlands. We disagree.

Sections 7.4f and 10.3 of the regulations require the submission and consideration of alternatives on all applications to the commission where regulated activities are implicated. Because we already have concluded that the commission's definition of regulated activity is valid, the question in this instance is whether the commission has the authority to require that an applicant provide alternatives to its proposal. Clearly, the act allows the commission to request such information. Section 22a-41 (a) (2) requires a municipal wetlands

---

[26] Section 7.4f of the regulations mandates that an application undertaking a regulated activity include "[a]lternatives considered by the applicant and why the alternatives were rejected in favor of the regulated activity(ies) proposed in the application. . . ."

Section 10.3 of the regulations provides in relevant part that "[i]n the case of an application which received a public hearing pursuant to a finding by the Agency that the proposed activity may have a significant impact on wetlands or watercourses, a permit shall not be issued unless the Agency finds on the basis of the record that a feasible and prudent alternative does not exist. . . ."

agency to consider "all relevant facts and circumstances, including . . . any feasible and prudent alternatives to, the proposed regulated activity which alternatives would cause less or no environmental impact to wetlands or watercourses . . . ." Thus, the regulations that the plaintiffs contest do nothing more than effectively mirror the language and mandate of the act. We note that this approach allows the commission, and *not* the applicant, to determine the likelihood that the proposed activity may or may not impact or affect the resource, and whether an alternative exists to lessen such impact. If the applicant were allowed to determine whether the activity does not intrude on or affect the resources, the issue likely would not come before the commission for consideration. We do not believe that the legislature envisioned such an approach. We conclude that the amendments enacted by the commission to §§ 7.4f and 10.3 of the regulations are facially valid.

## E

The plaintiffs also claim that § 2.1oo (5) of the regulations is invalid because the act does not give local inland wetlands agencies the authority to regulate subsurface water, often referred to as groundwater or wells. Under § 7.5 of the regulations, applicants who propose activity that may affect or impact the wetlands must provide an evaluation in their application of any anticipated "significant" effects that may occur. Section 2.1oo (5) defines a " '[s]ignificant activity' " as "[a]ny activity which causes a substantial diminution of flow of a natural watercourse, or groundwater levels of the regulated area . . . ." The plaintiffs argue that the regulation of activities affecting groundwater resources is precluded under the act because the act does not specifically include activities that affect groundwater within the definition of permissible " '[r]egulated activit[ies].' "

The plaintiffs, therefore, argue that § 2.1oo (3), (5), (7) and (8) of the regulations, which allow regulation of groundwater, are invalid. We disagree.

Section 2.1oo (3), (5), (7) and (8) regulate *impacts* on wetlands and watercourses, not groundwater per se. We note that § 2.1oo (5) requires that the applicant evaluate the affect that activity causing a substantial diminution of groundwater levels may have on wetlands. It is obvious that groundwater levels could potentially effect wetlands and, therefore, it is appropriate for the commission to consider the proposed construction activity on the groundwater levels.[27] Also, the legislative findings stated in § 22a-36 provide that the wetlands and watercourses are "indispensable and irreplaceable," and "are an interrelated web of nature essential to an adequate supply of surface and underground water; to hydrological stability and . . . to the recharging and purification of groundwater . . . ." As we stated in *Aaron*, where we upheld the ability of an inland wetlands commission to regulate septic systems and subsurface sewage disposal systems, the act "seeks not only to protect the state's inland wetlands and watercourses from pollution, but also to preserve their very existence and protect them from any disturbance, whether polluting or not, which could affect their conservation, economic, aesthetic, recreational or other values." (Internal quotation marks omitted.) *Aaron* v. *Conservation Commission*, supra, 183 Conn. 551. Thus, upholding the validity of § 2.1oo (3), (5), (7) and (8) of the regulations, and allowing a wetlands commission to regulate activities that will impact the wetlands, is consistent with the broad purposes of the act. The plain-

---

[27] For example, where groundwater rises above the surface in wetland areas that are "wet," activities that would lower that surface elevation potentially could have an adverse impact on the health of the system. Similarly, underground water withdrawals may be sufficient to create an adverse impact upon the function of a watercourse.

tiffs have, therefore, failed to establish the invalidity of the regulation beyond a reasonable doubt.

The judgment is affirmed.

In this opinion the other justices concurred.