## ALFRED BAIN ET AL. *v.* INLAND WETLANDS COMMISSION OF THE TOWN OF OXFORD ET AL.
### (AC 23240)

Foti, DiPentima and Peters, Js.

Argued May 29—officially released August 19, 2003

*Ramon S. Sous*, for the appellants (plaintiffs).

*George R. Temple,* for the appellee (named defendant).

*Patricia A. Horgan,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Kimberly P. Massicotte,* assistant attorney general, for the appellee (defendant commissioner of environmental protection).

*Opinion*

DIPENTIMA, J. The plaintiffs, Alfred Bain and Nola Bain, appeal from the judgment of the trial court dismissing their appeal from the denial of an application for a wetlands and watercourses permit in connection with the proposed construction of a residential home, including a driveway and septic system, in the town of Oxford. The plaintiffs contend that the court improperly dismissed their appeal in finding that the evidence supported the conclusion of the defendant inland wetlands commission (commission)[1] that activities taking place outside of the wetlands area had the potential to impact or affect the wetlands. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the plaintiffs' appeal. On April 26, 1999, the plaintiffs submitted an application to the commission for permission to build a two bedroom residential home, a driveway and a septic system. Although the lot size spans 2.13 acres (92,781 square feet), only 0.76 acres (32,953 square feet) encompass wetlands. A portion of the proposed construction was for a driveway and piping for the septic system, which would cross 267 square feet of wetlands. After several

---

[1] The commissioner of environmental protection joined as a party defendant pursuant to General Statutes § 22a-43 (a). The commissioner was not a party to any of the proceedings before the commission or the denial of the plaintiffs' application.

meetings, the commission denied the application for a permit on October 25, 1999.

On November 24, 1999, the plaintiffs appealed from the commission's decision to the Superior Court, alleging that the commission had acted unlawfully and arbitrarily, and that it had abused its discretion.[2] Furthermore, the plaintiffs claimed that there was not substantial evidence in the record to support the denial. Finally, the plaintiffs claimed that the commission's reasons did not demonstrate that there would be a significant impact on the wetlands.

In its April 24, 2002 decision dismissing the appeal, the court stated that the commission had set forth a recitation of reasons for the denial of the application:[3] "Application for July 6, 1999 site plan denial by reason of: After many inspections by individual commission members, and consideration for applicant's submitted material, the commission had reservations concerning the suitability of the site because of the extremely wet conditions.

"In fairness to you, the applicant, the Commission voted to retain ESM Associates, Inc., of Danbury, to render their findings. Their October 12, 1999 report is

[2] The court acknowledged counsels' stipulation that the plaintiffs were aggrieved. Although a court cannot confer standing on the basis of a stipulation of aggrievement, it is clear from the record that the plaintiffs were aggrieved. See General Statutes § 22a-43 (a); *Fleet National Bank* v. *Nazareth*, 75 Conn. App. 791, 793, 818 A.2d 69 (2003) ("'parties cannot confer subject matter jurisdiction on the court, either by waiver or by consent' ").

[3] We note that although the court participated in a site walk, the court could rely only on the evidence that was before the commission in rendering its decision. Thus, the court's observations from the site walk conducted on March 22, 2002, could be used only to confirm the evidence already presented in the record. In its memorandum of decision, the court stated that it had "observed that the terrain of the parcel is very flat with the exception of the area where the dwelling is proposed to be constructed, which is slightly elevated. The court also noticed areas of standing water and dampness under foot."

incorporated in your file. These findings were reviewed, and found to reinforce the Commissioner's Opinions.

"Given the obvious and significant negative features of the site, including, but not limited to, the flat topography and the wetlands on the proposed site, the fill of wetlands proposed can be expected to exacerbate flooding on and off the property.

"No conservation easement nor compensation for the destroyed wetlands were proposed.

"The July 6, 1999 site plan necessitates both driveway and septic to cross substantial wetlands.

"Given the presence of ponded water even in upland areas, grading outside of wetlands is likely to also exacerbate flooding both at site and to adjacent properties.

"Curtain drains have significant potential for not functioning for periods of time, especially during heavy rains, and/or with snow cover."

"The report of the soil engineers hired by the Commission noted a dense layer of compact soil which retarded infiltration and contributed to surface wetness. This report also concluded that curtain drains as proposed by the plaintiffs would be unsuitable due to the evenness of the terrain or lack of slope. This would contribute to run-off into adjacent wetlands. The engineers also noted that this type of soil has a tendency to be damp due to moderate permeability with the under soil having very slow permeability. Further, the effect on surrounding wetlands on and off the property could be potentially harmful with the use of pesticides and fertilizer customarily utilized by homeowners for lawn installation and maintenance."

The court concluded: "[T]he commission in this instance spent much time and devoted much consideration to the conditions surrounding this application and

the impact upon the delineated wetlands and land proximate to it, and concluded that the proposed construction would negatively affect those areas. In the court's view, the record discloses substantial evidence to support the agency's decision." The plaintiffs appealed from the court's decision on July 9, 2002.[4]

We begin by setting forth the standard of review that will govern our analysis of the issues presented. "In challenging an administrative agency action, the plaintiff has the burden of proof. . . . The plaintiff must do more than simply show that another decision maker, such as the trial court, might have reached a different conclusion. Rather than asking the reviewing court to retry the case de novo . . . the plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision. . . .

"In reviewing an inland wetlands agency decision made pursuant to the act, the reviewing court must sustain the agency's determination if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reason must be substantial; [t]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency. . . . This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence

---

[4] The plaintiffs assert a claim of unconstitutional taking of their property. That claim, however, was first presented in the plaintiffs' reply brief and was not before the trial court. The plaintiffs agreed to abandon that issue at oral argument.

does not prevent an administrative agency's finding from being supported by substantial evidence . . . ." (Internal quotation marks omitted.) *Tarullo* v. *Inland Wetlands & Watercourses Commission,* 263 Conn. 572, 584, 821 A.2d 734 (2003); *Huck* v. *Inland Wetlands & Watercourses Agency,* 203 Conn. 525, 540–42, 525 A.2d 940 (1987). The duty of a reviewing court in a wetlands appeal is to uphold the agency's action unless the action was "arbitrary, illegal or not reasonably supported by the evidence." (Internal quotation marks omitted.) *Keiser* v. *Conservation Commission,* 41 Conn. App. 39, 41, 674 A.2d 439 (1996). "We, in turn, review the action of the trial court." (Internal quotation marks omitted.) *Raczkowski* v. *Zoning Commission,* 53 Conn. App. 636, 640, 733 A.2d 862, cert. denied, 250 Conn. 921, 738 A.2d 658 (1999).

Although the plaintiffs raise only one issue on appeal to this court, their brief contains several discrete arguments. We will address each argument in turn. The plaintiffs claim that the commission based the denial of their application on proposed activities occurring outside the delineated wetlands and, further, that there was no evidence that those activities were "likely" to impact or to affect the wetlands area as set forth in General Statutes § 22a-42a (f). Section 22a-42a (f) provides that a municipal inland wetlands agency may regulate activities within areas around wetlands or watercourses if those activities are likely to impact or affect wetlands or watercourses. "This statutory language effectively codifies our [Supreme Court's] previous statement in the seminal case of *Aaron* v. *Conservation Commission,* [183 Conn. 532, 542, 441 A.2d 30 (1981)] wherein [the court] held that activity that occurs in nonwetlands areas, but that affects wetlands areas, falls within the scope of regulated activity." (Internal quotation marks omitted.) *Queach Corp.* v. *Inland Wetlands Commission,* 258 Conn. 178, 197–98,

779 A.2d 134 (2001); *Ahearn* v. *Inland Wetlands Agency-Conservation Commission*, 34 Conn. App. 385, 391, 641 A.2d 812, cert. denied, 230 Conn. 911, 645 A.2d 1015 (1994).

We agree with the court that the record before the commission contained substantial evidence to support the commission's decision and demonstrated that activities on nonwetlands would likely impact or affect the wetlands. The minutes of the meetings held by the commission concerning the application supported the commission's denial of the application. According to the minutes of the April 26, 1999 meeting and a written report dated May 20, 1999, the commission, during site visits, indicated that 90 percent of the property had water on it and that "much wet was found—scattered throughout the lot."

During the commission's meeting on August 9, 1999, the commission members discussed whether the proposed house would encroach on approximately 870 square feet of buffer area and what the limit of activity in the buffer zone would be. Also on that date, the commission read into the record a site inspection report indicating the potential dangers of flooding resulting from fill on the lot, flooding onto neighboring property and seasonal flooding. Finally, during the meeting on October 25, 1999, while the plaintiffs' engineer assured the commission that he had no fear of those areas flooding or the drain flow changing after construction, the commission referred to the October 12, 1999 report by Environmental Science Management Associates, the soil scientist hired by the commission to analyze the subject property, which detailed the potential impact on the wetlands.[5]

---

[5] Primarily, the commission relied on the following passages from the report: "The limited upland area surrounding the proposed residence almost guarantees further encroachment into the surrounding wetlands by the future property dwellers since useable space is severely limited. Water quality impacts associated with the household use of fertilizer, pesticides,

As previously discussed, the commission provided a number of reasons that supported its decision to deny the plaintiffs' application. The commission disclosed that there would be a direct environmental impact on the delineated wetlands, i.e., the septic pipe and driveway, as one of several reasons for the denial of the application, and that reason was supported by evidence in the record. See General Statutes § 22a-38 (13); see *Queach Corp.* v. *Inland Wetlands Commission*, supra, 258 Conn. 198; *Forsell* v. *Conservation Commission*, 43 Conn. App. 239, 247–48, 682 A.2d 595 (1996). The commission, furthermore, considered evidence in the record regarding activity on nonwetlands and its impact on the wetlands resources.

"The agency's decision must be sustained if an examination of the record discloses evidence that supports *any one* of the reasons given." (Emphasis added.) *Huck* v. *Inland Wetlands & Watercourses Agency*, supra, 203 Conn. 539–40. Furthermore, General Statutes § 22a-41 (b) "does not require an inland wetlands agency explicitly to specify the factors that it has utilized in its evaluation of an application. [The commission will have performed its duties] [a]s long as a search of the entire record reveals the basis for the agency's decision and supports reasonable inferences that the agency adhered to the factors enumerated in § 22a-41 (a) . . . ." *Samperi* v. *Inland Wetlands Agency*, 226 Conn. 579, 598, 628

and herbicides could prove a concern, since the wet conditions encountered on the site for much of the year promote the mobility of such constituents. The proposed residential development of the property would further fragment the wetland, resulting in additional decline in its functional values.

"While most septic system leaching fields installed in areas of seasonal high ground water employ some type of up-gradient subsurface drainage, the absence of slope precludes this option. The unidirectional flow of perched groundwater on level terrain such as this also bodes concerns for the overall efficacy of the leaching system, especially during seasonally wet periods. The presence of ponded water in upland areas on the day of the field inspection adds to the level of [concern.]"

A.2d 1286 (1993). The record in this case indicated that the commission considered the statutory criteria specified in § 22a-41 (a) and how "likely" an impact would be. The commission found that those activities would directly or "likely" have an impact on the wetlands.[6]

The record reveals that wetlands are in close proximity to where the plaintiffs would like to locate the house and septic system. The court noted the experts' opinions and the commissioners' observations. It is clear, after reviewing the record and the soil scientist's report, that there was substantial evidence to support the finding that the nonwetlands area activities would likely impact or affect the wetlands. For example, the commission deliberations centered on the impact of flooding on and off the property and its impact on future owners and neighbors. The soil scientist's report concluded that the proposed activities would encroach on surrounding wetlands and result in a decline in the functional value of the wetlands. In light of that evidence, we cannot conclude that the commission improperly considered the environmental impact criteria pursuant to §§ 22a-41 and 22a-42a (f).

The plaintiffs also argue that the commission did not present expert evidence to contradict the testimony of the plaintiffs' expert. We are not convinced. "[A] lay commission acts without substantial evidence when it relies on its own knowledge and experience concerning technically complex issues . . . . [W]e recognize that an administrative agency is not required to believe any of the witnesses, including expert witnesses . . . [but] it must not disregard the only expert evidence available on the issue when the commission members lack their

---

[6] The commission did not find that those activities were "significant." Therefore, a public hearing was not required pursuant to General Statutes §§ 22a-39 (k) and 22a-42a, and § 9.1 of the inland wetlands and watercourses regulations of the town of Oxford.

own expertise or knowledge." (Citations omitted; internal quotation marks omitted.) *Tanner* v. *Conservation Commission*, 15 Conn. App. 336, 340–41, 544 A.2d 258 (1988). "Knowledge obtained through personal observations of the locus may properly be considered by the agency in arriving at reasons given for its denial." (Internal quotation marks omitted.) *Kaeser* v. *Conservation Commission*, 20 Conn. App. 309, 316, 567 A.2d 383 (1989).

The plaintiffs rely on *Milardo* v. *Inland Wetlands Commission*, 27 Conn. App. 214, 605 A.2d 869 (1992), in which this court affirmed the trial court's decision to reverse the inland wetlands commission's denial of the plaintiff's permit application because the record lacked substantial evidence to support the commission's decision. Id., 215. In that case, the trial court noted that the transcripts of the public hearings failed to identify the speakers, were replete with omissions and, although three members had visited the site, any concerns the members had were not specifically related to the plaintiff's proposal, nor were there any findings in the record concerning the visit. Id., 218–19. The town engineer stated that the proposal appeared to be satisfactory. Id., 219. One member voiced concerns for the wetlands crossings and the possible damage, but there was no listing of what those concerns were, what damage might occur or the basis for either. Id., 219–20. The record also did not contain findings concerning the on-site inspections. Id., 220.

Unlike the situation in *Milardo*, however, the commission in this case documented all of its site visits and concerns, and the bases for those concerns. The commission, further, provided a litany of reasons for the application's denial. The commission, additionally, had its expert inspect the property and submit a report. It was within the discretion of the commission to determine which expert's opinion to rely on and whether

the commission should consider its observations from its site visits.[7] See *Samperi* v. *Inland Wetlands Agency*, supra, 226 Conn. 597–99; *Huck* v. *Inland Wetlands & Watercourses Agency*, supra, 203 Conn. 540–42; but see *Feinson* v. *Conservation Commission*, 180 Conn. 421, 428–29, 429 A.2d 910 (1980).

After our review of the record, we find that the commission provided its reasons for denying the plaintiffs' application for a permit and that those reasons were supported by substantial evidence. Nothing in the record suggests that the commission's decision was reached arbitrarily or was fundamentally unfair. The court, in reviewing the record, acted properly and in accordance with applicable law.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] The plaintiffs also challenged the commission's use of information gathered from the members' site visits. "Although site visits are not required by the act, we have recognized that they may be necessary for commissioners thoroughly to evaluate property that is the subject of an application. . . . Commissioners are permitted to base their decisions in part on facts within their 'peculiar knowledge,' including information gleaned from a site inspection, as long as those facts are disclosed to the parties. . . . A site visit is therefore an appropriate investigative tool." (Citations omitted; internal quotation marks omitted.) *Grimes* v. *Conservation Commission*, 243 Conn. 266, 277–78, 703 A.2d 101 (1997). In this case, all observations were disclosed during the commission's meetings properly and were available in the record.