PRESTIGE BUILDERS, LLC *v.* INLAND WETLANDS COMMISSION OF THE CITY OF ANSONIA ET AL.
(AC 22718)

Lavery, C. J., and Schaller and Hennessy, Js.

Argued March 20—officially released September 30, 2003

*Ian Angus Cole,* for the appellant (plaintiff).

*Ronald F. Bozelko,* with whom was *Kevin Blake,* for the appellee (named defendant).

*Patricia A. Horgan,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Kimberly P. Massicotte,* assistant attorney general, for the appellee (defendant commissioner of environmental protection).

*Opinion*

LAVERY, C. J. The plaintiff, Prestige Builders, LLC, appeals from the trial court's dismissal of its appeal from the decision of the defendant[1] inland wetlands commission of the city of Ansonia (commission), denying the plaintiff's application to construct an eight lot

---

[1] Pursuant to General Statutes § 22a-43 (a), the commissioner of the department of environmental protection was made a defendant in the trial court.

residential subdivision. The dispositive issue[2] in this appeal is whether the commission can exercise jurisdiction over activities that do not occur within or make use of an inland wetland or watercourse and where the commission has not promulgated regulations granting it authority to regulate upland review areas.[3] We conclude that the commission cannot do so, and, accordingly, reverse the judgment of the trial court.

The following facts are necessary for the resolution of the plaintiff's appeal. On May 18, 2000, the plaintiff filed an application for permission to have a subdivision on property in which wetlands or watercourses are located in the city of Ansonia. The plaintiff initially proposed a nine lot residential subdivision on approximately 7.5 acres. Located on the plaintiff's property were several areas of wetlands and watercourses totaling approximately one acre.[4] Pursuant to its regulations,

___

[2] The reason this is the dispositive issue on appeal is because the plaintiff's plan did not include "any operation within or use of a wetland or water course involving removal or deposition of material or any obstruction, constriction, alteration, pollution of, or construction within such wetlands . . . ." Ansonia Inland Wetlands Regs., § 2.1.7. The commission had only the authority to require a permit for activities that fit within this definition. Although there does exist an intermittent watercourse on the plaintiff's property, the proposed activity is not within nor does it make use of that watercourse by removing or depositing material within it. There also was no obstruction, constriction, alteration, pollution of or constriction within that watercourse by the proposed activity. Rather, the proposed activity would occur outside of any wetland or watercourse. Absent a regulation that provides the commission with the authority over areas outside wetlands and watercourses, we must determine whether the commission is given such authority from statute or common law to regulate in those areas without having first extended its authority via a written regulation.

[3] An upland review area is a nonwetland or nonwatercourse area in which an inland wetland commission may regulate activities that are likely to affect or to impact wetlands or watercourses. Those also are known as buffer zones or setback areas. See Department of Environmental Protection, "Guidelines for Upland Review Area Regulations Under Connecticut's Inland Wetlands & Watercourses Act" (1997).

[4] Both the plaintiff and the commission hired soil scientists to locate and to map the wetlands and watercourses on the plaintiff's property. Although there was substantial agreement on the location of the majority of those

the commission sent the plaintiff's site plan to the New Haven County soil and water conservation district, the valley regional planning agency, and the Ansonia conservation and municipal planning commissions for review and comment.[5] On the basis of the comments received from those agencies, discussions at commission meetings and remarks made at the public hearings, the plaintiff revised its site plan to include only eight lots.

On December 7, 2000, the commission met again to discuss the plaintiff's application. Throughout the entire application process, the plaintiff vehemently denied that there was any "regulated activity" on the property as defined by the commission's regulations. Section 2.1.7 of the Ansonia inland wetlands regulations defines "regulated activity" as "any operation within or use of a wetland or water course involving removal or deposition of material or any obstruction, constriction, alteration, pollution of, or construction within such wetlands . . . ." Ansonia Inland Wetlands Regs., § 2.1.7. The regulations also define the terms "watercourses" and "wetlands." Section 2.1.13 defines "watercourses" as "rivers, streams, brooks, water ways, the water course of a defined stream including banks, beds, and water, lakes, marshes, swamps, bogs, and all other bodies of water, natural or artificial, public or private, which are contained within, flow through, or border on the City of Ansonia or any portion thereof . . . ." Id., § 2.1.13. "Wetlands" are defined in § 2.1.14 as "land, including submerged land . . . which consists of any of the soil

inland wetlands and watercourses, there still remained some dispute over small areas. The location of those disputed areas, however, is not an issue in this appeal, nor do they have any bearing on the outcome of our resolution of the plaintiff's claim.

[5] The commission classified the plaintiff's application as a class B application, meaning that the proposed use involved a regulated activity. See Ansonia Inland Wetlands Regs., § 5.2.2. Accordingly, the commission sent the plaintiff's site plans for comment to the various agencies.

types designated as poorly drained, very poorly drained, alluvial, and flood plain . . . ." Id., § 2.1.14. The commission, however, determined that the plaintiff's proposed activity constituted a regulated activity.

During the December 7, 2000 meeting, John Izzo, the chairman of the commission, stated the reasons supporting the commission's determination that the plaintiff's proposal involved a regulated activity. He pointed out a possible intermittent watercourse that ran through a portion of lot eight that might be affected by any development on that parcel of land.[6] Izzo stated that the commission was responsible for regulating wetlands and watercourses, and that the existence of a possible intermittent watercourse made the proposed activity a regulated activity. Izzo also referred to a report of the New Haven County soil and water conservation district that stated that inland wetlands commissions are charged with protecting wetlands from erosion, turbidity and siltation while maintaining hydrolic stability and deterring the danger of flooding. According to Izzo, because the plaintiff's property contained wetlands and watercourses, any activity in and around those areas constituted a regulated activity. Finally, Izzo noted the site walks conducted by the commission, reports from the various agencies and the comments from members of the public as a basis for the commission's classification. All of those sources, according to Izzo, indicated the possibility of flooding, erosion, icing and a negative effect on wells that was likely to result from any proposed activity on the plaintiff's land.

Izzo concluded that because the plaintiff's application was classified as having a regulated activity, the commission was required to analyze the environmental

---

[6] The plaintiff offered to withdraw lot eight from its site plan and proceed only with lots one through seven. No revised site plans, however, were submitted to the commission.

impact of the proposed activity.[7] He noted that the plaintiff's property was extremely steep and wet, had a twenty year history of flooding and contained a high water table, all of which would affect the ability of the wetlands and watercourses to absorb, to store or to purify water and to prevent flooding. The commission offered the plaintiff a permit for a four lot subdivision on the land as an alternative, but the plaintiff declined that offer. The commission then voted to deny the plaintiff's application.

After denying the plaintiff's application, the commission adopted an amendment to its regulations that added language to its definition of "regulated activity" to include an upland review area of 100 feet.[8] The plaintiff was not required to comply with that amendment because it was adopted after the application was filed; General Statutes § 22a-42e; and after the application had been denied. Prior to that amendment, the commission did not have a regulation governing activities in upland review areas.[9] The plaintiff appealed to the court pursuant to General Statutes § 22a-43. The court dismissed the plaintiff's appeal. This appeal followed.

The plaintiff claims that the court improperly concluded that the commission properly denied its application where none of the proposed activity was within a wetland or watercourse and where the commission had not enacted a regulation granting it authority over upland review areas. We agree.

[7] Section 7.1 of the Ansonia inland wetlands regulations provides in relevant part: "Before taking action on a Class B Application, the Commission shall seek to determine (a) the environmental impact of the proposed activity, (b) the importance of the regulated area affected by the activity, and (c) the alternatives to the proposed activity."

[8] The following language was added: "[R]egulated activity shall also include all such of force and activities within '100 feet' around such inland wetlands or watercourses and which activities are likely to impact or effect wetlands or watercourses."

[9] Throughout the pendency of the plaintiff's application, the commission claimed that it had an inherent fifty foot upland review area.

The plaintiff argues that an inland wetlands commission must first enact a regulation governing upland review areas before it in fact may exercise its statutory authority over activities in such areas. The court concluded that the commission properly exercised its authority over activities in upland review areas despite the absence of a regulation governing such areas. Because the issue raised is a question of law, our standard of review is plenary. See *Rich-Taubman Associates* v. *Commissioner of Revenue Services*, 236 Conn. 613, 618, 674 A.2d 805 (1996). There are two questions we must address in our analysis of the plaintiff's claim. First, we must determine whether General Statutes § 22a-42a (f) provides the commission with the authority to regulate activities in upland review areas without first enacting a regulation governing activities in such areas. Second, we must address whether our common law provides the commission with such authority.

Resolution of the first question involves our construction of § 22a-42a (f). "[I]n interpreting statutes, we look at all the available evidence, such as the statutory language, the legislative history, the circumstances surrounding its enactment, the purpose and policy of the statute, and its relationship to existing legislation and common law principles." (Internal quotation marks omitted.) *State* v. *Courchesne*, 262 Conn. 537, 561, 816 A.2d 562 (2003) (en banc).

First, we must analyze the language of the statute. Section 22a-42a (f) provides: "If a municipal inland wetlands agency regulates activities within areas around wetlands or watercourses, such regulation shall (1) be in accordance with the provisions of the inland wetlands regulations adopted by such agency related to application for, and approval of, activities to be conducted in wetlands or watercourses and (2) apply only to those activities which are likely to impact or affect wetlands or watercourses." That statutory subsection

becomes applicable to an inland wetlands commission only *if that commission regulates activities outside defined wetlands or watercourses.* The word "if" connotes that discretion is given to a commission to enact regulations governing upland review areas if the commission finds that such regulations are necessary to protect wetlands and watercourses. If a commission does not enact such regulations, then it may not exercise its statutory authority to govern activities outside of inland wetlands and watercourses.

Such a conclusion is supported by the relationship between § 22a-42a (f) and the rest of the Inland Wetlands and Watercourses Act. General Statutes §§ 22a-36 through 22a-45. "[I]t is an elementary rule of statutory construction that we must read the legislative scheme as a whole in order to give effect to and harmonize all of the parts." (Internal quotation marks omitted.) *Massad* v. *Eastern Connecticut Cable Television, Inc.*, 70 Conn. App. 635, 640, 801 A.2d 813, cert. denied, 261 Conn. 926, 806 A.2d 1060 (2002). Subdivisions (13), (15) and (16) of General Statutes § 22a-38 define "regulated activity," "wetlands" and "watercourses," respectively.[10] Those definitions are

---

[10] General Statutes § 22a-38 (13) defines "regulated activity" as "any operation within or use of a wetland or watercourse involving removal or deposition of material, or any obstruction, construction, alteration or pollution, of such wetlands or watercourses . . . ."

General Statutes § 22a-38 (15) defines "wetlands" in relevant part as "land, including submerged land . . . which consists of any of the soil types designated as poorly drained, very poorly drained, alluvial, and floodplain . . . ."

General Statutes § 22a-38 (16) defines "watercourses" in relevant part as "rivers, streams, brooks, waterways, lakes, ponds, marshes, swamps, bogs and all other bodies of water, natural or artificial, vernal or intermittent, public or private, which are contained within, flow through or border upon this state or any portion thereof . . . . Intermittent watercourses shall be delineated by a defined permanent channel and bank and the occurrence of two or more of the following characteristics: (A) Evidence of scour or deposits of recent alluvium or detritus, (B) the presence of standing or flowing water for a duration longer than a particular storm incident, and (C) the presence of hydrophytic vegetation . . . ."

almost the same, verbatim, as the commission's definitions in its regulations.[11]

Nowhere in either the statutory definitions or in the commission's definitions of those terms is there any mention of upland review areas. The Inland Wetlands and Watercourses Act, therefore, requires only that a municipal commission regulate activity within or that makes use of inland wetlands or watercourses. The authority for a commission to regulate outside of those boundaries is governed by § 22a-42a (f) if the regulations are deemed "necessary to protect [its] wetlands and watercourses . . . ." General Statutes § 22a-42 (c). What constitutes "necessary" is interpreted "as that which is reasonably designed to effectuate the stated purposes of the wetlands statutes." *Cioffoletti* v. *Planning & Zoning Commission*, 209 Conn. 544, 561, 552 A.2d 796 (1989). That legislative purpose is set forth in great detail in General Statutes § 22a-36. Our Supreme Court has described that purpose as being "that [t]he inland wetlands and watercourses of the state of Connecticut are an indispensable and irreplaceable but fragile natural resource with which the citizens of the state have been endowed, and that [t]he preservation and protection of the wetlands and watercourses from random, unnecessary, undesirable and unregulated uses, disturbance or destruction is in the public interest and is essential to the health, welfare and safety of the citizens of the state." (Internal quotation marks omitted.) *Queach Corp.* v. *Inland Wetlands Commission*, 258 Conn. 178, 193, 779 A.2d 134 (2001).

The fact that the legislature did not include in its definition of "regulated activity," "wetland" or "watercourses" any reference to upland review areas demon-

---

[11] The major difference between the two sets of definitions is that the commission's definition of "watercourses" does not include the definition of "intermittent watercourses" that is included in General Statutes § 22a-38 (16).

strates that the regulation of such areas is not mandatory, but left to the discretion of local commissions if they determine that such regulations are necessary to protect and to preserve inland wetland and watercourses.

The legislative history of the enactment of § 22a-42a (f) further supports the conclusion that a formal regulation governing activities in upland review areas is a necessary prerequisite to a commission's exercise of its statutory authority over such activities. The thrust of the enactment of § 22a-42a (f) was to codify the authority of local commissions to regulate activities in upland review areas while at the same time limiting which activities could be regulated. See id., 183 ("legislature has amended the [Inland Wetlands and Watercourses Act] to provide express authority for municipal agencies to regulate areas that extended beyond designated wetland boundaries"). The enactment was summarized as follows: "it makes it much more specific for inland wetlands commissions *to be able to regulate buffer zones,* given the buffer is going to be affected by development that would have an adverse effect on the wetland." (Emphasis added.) 38 S. Proc., Pt. 11, 1995 Sess., p. 3929, remarks of Senator Catherine W. Cook.

Testimony before the legislature's joint standing committee on the environment also demonstrated the fact that regulation of upland review areas was not mandatory, but rather discretionary if a local commission found it necessary to protect inland wetland and watercourses. See, e.g., Conn. Joint Standing Committee Hearings, Environment, Pt. 4, 1995 Sess., p. 1086, remarks of Robert Smith of the department of environmental protection's bureau of water management (80 percent as opposed to 100 percent of municipalities have upland review area regulations); id., p. 1138, remarks of Tom Turick of the Connecticut Business and Industry Association; id., p. 1222, written testimony

of Michael A. Aurelia, town of Greenwich inland wetlands and watercourses agency director (municipalities have discretion to enact upland review area regulations); id., p. 1236, comments of Rivers Alliance of Connecticut (municipalities "are enabled to set regulatory buffer areas at their own discretion to protect the integrity of the wetlands and watercourses").

The conclusion that a commission, under § 22a-42a (f), must first enact a formal regulation to exercise its authority over upland review areas is consistent with our case law. Our courts consistently have recognized the *authority* of an inland wetlands commission to regulate activities in areas adjacent to wetlands and watercourses that would affect or impact such wetlands or watercourses. See *Queach Corp.* v. *Inland Wetlands Commission,* supra, 258 Conn. 178; *Mario* v. *Fairfield,* 217 Conn. 164, 585 A.2d 87 (1991); *Lizotte* v. *Conservation Commission,* 216 Conn. 320, 579 A.2d 1044 (1990); *Cioffoletti* v. *Planning & Zoning Commission,* supra, 209 Conn. 544; *Aaron* v. *Conservation Commission,* 183 Conn. 532, 441 A.2d 30 (1981). The authority to regulate in upland review areas in each of those cases was viewed as discretionary in nature. In each case, the local inland wetlands commission, pursuant to that discretion, had enacted regulations over upland review areas. Accordingly, we conclude that § 22a-42a (f) grants a commission the authority to regulate upland review areas in its discretion if it finds such regulations necessary to protect wetlands or watercourses from activity that will likely affect those areas. That authority is properly exercised, however, only when the commission acts pursuant to a formal regulation governing such areas.

We next turn to the second question, which is whether our case law grants a commission the authority to regulate upland review areas absent a formal regulation governing such areas. Recently, our Supreme Court

noted that § 22a-42a (f) was not designed to overrule case law that provides that a "regulated activity" may include an activity that occurs in nonwetland areas, but that will affect or impact wetland areas. *Queach Corp.* v. *Inland Wetlands Commission,* supra, 258 Conn. 198. Rather, the *Queach Corp.* court stated that § 22a-42a (f) effectively codified the statement made in the seminal case of *Aaron* v. *Conservation Commission,* supra, 183 Conn. 542, that "[a]n examination of the [Inland Wetlands and Watercourses Act] reveals that one of its major considerations is the environmental impact of proposed activity on wetlands and water courses, which may, in some instances, come from outside the physical boundaries of a wetland or water course." (Internal quotation marks omitted.) *Queach Corp.* v. *Inland Wetlands Commission,* supra, 197–98.

Our Supreme Court has held that the Inland Wetlands and Watercourses Act grants local commissions the authority to regulate upland review areas. See id., 193; *Mario* v. *Fairfield,* supra, 217 Conn. 170; *Lizotte* v. *Conservation Commission,* supra, 216 Conn. 331; *Cioffoletti* v. *Planning & Zoning Commission,* supra, 209 Conn. 558; *Aaron* v. *Conservation Commission,* supra, 183 Conn. 542. An analysis of those cases reveals two important facts. First, a local inland wetlands commission possesses the authority to enact regulations governing upland review areas. Second, the commission *must first enact* a regulation over upland review areas before it can regulate activities within those areas. In each of those cases, appellate review was based on a regulation *that the commission had enacted.* We have never held that a commission may exercise its authority over upland review areas absent a regulation governing such areas. "In order to regulate [upland review areas], the [commission] *must have regulations for such areas* . . . ." (Emphasis added.) R. Fuller, 9 Connecticut Prac-

tice Series: Land Use Law and Practice (2d Ed. 1999) § 11.5, p. 262.

In addition, the department of environmental protection in 1997 published a document entitled "Guidelines for Upland Review Area Regulations Under Connecticut's Inland Wetlands & Watercourses Act" (1997) (guidelines).[12] The language used in that document demonstrates that municipalities have the discretion to regulate activities in upland review areas. The guidelines provide that "such regulations are optional." Id., p. 1. They also indicate that "[a]n upland activity which is likely to impact or affect wetlands or watercourses is a regulated activity and should be identified as such in the regulations." Id., p. 2. Later, the guidelines note that activities located in upland review areas "may be deemed to be a regulated activity . . . ." Id., p. 4. Most importantly, however, the guidelines provide: *"To be enforceable, the upland review areas must be adopted in the town's inland wetlands and watercourses regulations . . . ."* (Emphasis added.) Id., p. 9. Clearly, the guidelines demonstrate that a commission must first enact a regulation that gives it authority over upland review areas before it may, in fact, regulate within those areas.[13]

---

[12] The formation of those guidelines was mentioned during the legislative hearings as being a future source of guidance concerning upland review areas. See Conn. Joint Standing Committee Hearings, supra, pp. 1126, 1128, remarks of Tom Maloney of the Connecticut River Watershed Council; id., p. 1221, written testimony of Michael A. Aurelia, town of Greenwich inland wetlands and watercourses agency director; id., pp. 1227–29, C. Youell, "Highlights: Riparian Buffer Zone Conference," Society of Soil Scientists of Southern New England.

Our use of those guidelines is meant to be demonstrative evidence of the discretionary authority granted to commissions to regulate in upland review areas and is not meant to be authoritative.

[13] The defendant commissioner of the department of environmental protection in his brief cites the following passage in the guidelines to support his argument that no enabling regulation is necessary: "While requiring a permit for specified activities within defined upland review area boundaries, these wetland agencies still maintain their authority to regulate proposed activities located in more distant upland review areas if they find that the activities

We therefore conclude that neither § 22a-42a (f) nor our case law allows a commission to exercise its authority over activities in upland review areas without having first enacted a regulation governing such areas. "Municipal land use agencies have occasionally attempted to regulate land use before passing regulations. Such action has consistently been overturned by the courts." 9 R. Fuller, supra, § 22.2, p. 487. Once inland wetlands regulations are enacted, they may be amended pursuant to the procedure set forth in § 22a-42a (b). The commission here did not amend its regulations to govern upland review areas until after it had ruled on the plaintiff's application. The commission, therefore, did not properly exercise its authority to regulate upland review areas.

The commission had the authority to regulate activities in upland review areas, but elected not to enact any regulations governing such areas. Rather, its regulations governed only activities that occurred within or that made use of wetlands or watercourses. The definitions of "wetlands," "watercourses" and "regulated activity" in the commission's regulations did not encompass upland review areas.[14] The commission, therefore, improperly denied the plaintiff's application because of proposed activities in upland review areas.

The commission's reasons for denying the plaintiff's application were based on activity that occurred within upland review areas, including the likelihood of flood-

are likely to impact or affect a wetland or watercourse." Guidelines, supra, p. 1. That passage does nothing more that restate our case law and the statutory language governing upland review areas: A commission *may* enact regulations over more distant land if activity is likely to affect wetlands and watercourses.

[14] The guidelines provide three models to assist municipalities in establishing regulations over upland review areas by inserting language defining upland review areas in their definitions of "regulated activity." Guidelines, supra, pp. 3–4. The commission here did not do so until after the plaintiff's application had been denied.

ing, erosion, icing and a negative effect on local wells. Izzo remarked on several occasions that the reason for denying the plaintiff's application was not that the activity was within or made use of wetlands or watercourses, but that the activity in upland review areas would have an adverse impact on those wetlands and watercourses. Without a regulation governing activity within upland review areas, the commission improperly denied the plaintiff's application. According to the commission's regulations, the plaintiff's application should have been classified as a class A application and granted without delay.[15] We conclude, therefore, that the court improperly dismissed the plaintiff's appeal because the commission did not properly exercise its authority to regulate activities within upland review areas.

Because we conclude that the court improperly found that the commission had the authority to deny the plaintiff's application, we need not address the plaintiff's second claim that the court improperly found the existence of substantial evidence to support the commission's conclusion that the proposed activity would likely impact wetlands and watercourses.

The judgment is reversed and the case is remanded with direction to render judgment directing the commission to grant the plaintiff's application.

In this opinion the other judges concurred.

---

[15] Section 5.2.1 of the Ansonia inland wetlands regulations provides: "Class A. Application. This classification shall be given to any application which the Commission determines does not involve a regulated activity. Upon assignment of such classification, a permit shall be granted without delay."