THOMAS W. CORNACCHIA ET AL. *v.*
ENVIRONMENTAL PROTECTION
COMMISSION OF THE TOWN
OF DARIEN
(AC 27661)

Bishop, Gruendel and Beach, Js.

Argued May 1—officially released July 29, 2008

*Robert F. Maslan, Jr.*, with whom was *Amy J. Boland*, for the appellants (plaintiffs).

*Ira W. Bloom*, with whom was *Mario F. Coppola*, for the appellee (defendant).

*Opinion*

GRUENDEL, J. This appeal concerns the denial of an application for a permit to conduct regulated activity

in an upland review area.[1] The plaintiffs, Thomas W. Cornacchia and Nancy Cornacchia, appeal from the judgment of the trial court dismissing their appeal from the decision of the defendant, the environmental protection commission of the town of Darien (commission), denying in part and approving in part the plaintiffs' application for a permit to conduct regulated activities on their property. The plaintiffs claim that the court improperly dismissed their appeal because the commission improperly concluded that the proposed activities would have a significant impact on the wetlands and watercourses despite the fact that the record lacked substantial evidence to support this conclusion.[2] We reverse the judgment of the trial court.

The record reveals the following relevant facts and procedural history. The size of the plaintiffs' property is approximately 1.38 acres. The property contains a single-family, two story home, an asphalt driveway and a stone terrace, which extends from the rear of the house. An inland watercourse known as Stony Brook flows along the rear, easterly boundary of the property, and the portion of the plaintiffs' rear lawn located adjacent to Stony Brook is classified as a wetlands area because of the soil type.[3] The rear lawn, from where

---

[1] "An upland review area is a nonwetland or nonwatercourse area in which an inland wetland commission may regulate activities that are likely to affect or to impact wetlands or watercourses. . . . See Department of Environmental Protection, Guidelines for Upland Review Area Regulations Under Connecticut's Inland Wetlands & Watercourses Act (1997)." (Internal quotation marks omitted.) *Prestige Builders, LLC* v. *Inland Wetlands Commission*, 79 Conn. App. 710, 712 n.3, 831 A.2d 290 (2003), cert. denied, 269 Conn. 909, 852 A.2d 739 (2004).

[2] The plaintiffs also claim that the commission improperly concluded that the proposed activities would pose a significant impact on the wetlands and watercourses despite expert testimony that established that the proposed activities would not have such an impact, and the commission failed to articulate a basis for rejecting the expert testimony. Because we reverse on other grounds, we need not reach this claim.

[3] This section of lawn is classified as a wetlands area because the soil is poorly drained. See § 2.1 (jj) of the Darien inland wetlands and watercourses regulations.

the wetland soil ends, extending in the direction of the house, is a nonwetland, upland review area. The plaintiffs sought to construct an in-ground swimming pool and related features[4] in the upland review area of their property, as well as a riparian buffer within the wetland area along the shore of Stony Brook. Because the activity associated with both the construction of the pool and the riparian buffer is defined in the Darien inland wetlands and watercourses regulations as a "regulated activity" for which a permit is required, the plaintiffs filed an application with the commission seeking such a permit.[5] After publishing notice of and holding a public hearing on the matter of the permit, the commission granted that part of the plaintiffs' application that sought to create a riparian buffer along the shore of Stony Brook and denied that part of the plaintiffs' application that sought to build an in-ground swimming pool and related features in the upland review area.

The plaintiffs appealed to the Superior Court from that part of the commission's decision denying them a permit to construct the in-ground swimming pool and related features. The court dismissed the appeal, finding, inter alia, that there was "significant evidence in the record to support the [commission's] decision to

---

[4] Specifically, the permit sought permission to build an in-ground swimming pool, spa, pool house-storage shed and surrounding terrace.

[5] Section 6.1 of the Darien inland wetlands and watercourses regulations provides that any person who engages in a "regulated activity" must first obtain a permit for such activity from the commission.

Section 2.1 (y) provides in relevant part: " 'Regulated activity' means any operation within or use of a wetland or watercourse (or activity removed from a wetland or watercourse which affects a wetland or watercourse) involving removal or deposition of material; or any obstruction, construction, alteration or pollution of such wetlands or watercourses, but shall not include the specified activities in Section 4 of these regulations.

In addition, regulated activities shall include: "1. grading, filing, excavation, or any other earth disturbing activities; or removal or deposition of any material; or removal of any existing vegetation within fifty feet of wetlands or watercourses."

deny the permit based on the proposed construction's significant impact on the wetland areas." This appeal followed. Additional facts will be set forth as necessary.

"[I]n an appeal from a decision of an inland wetlands commission, a trial court must search the record of the hearings before that commission to determine if there is an adequate basis for its decision. . . . Even if the agency's reasons for denying an application are merely speculative, the reviewing court must search the record for reasons to support the agency's decision . . . and, upon finding such, uphold that decision regardless of the language used by the agency in stating its reasons for the denial." (Citation omitted; internal quotation marks omitted.) *Manatuck Associates* v. *Conservation Commission*, 28 Conn. App. 780, 784, 614 A.2d 449 (1992).

Although the reviewing court must sustain the agency's determination if an examination of the record discloses evidence that supports any one of the reasons given, "[t]he evidence . . . to support any such reason must be substantial; [t]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency. . . . This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence . . . . Evidence of general environmental impacts, mere speculation, or general concerns do not qualify as substantial evidence." (Internal quotation marks omitted.) *Toll Bros.*,

*Inc.* v. *Inland Wetlands Commission*, 101 Conn. App. 597, 600, 922 A.2d 268 (2007).

"The [Inland Wetlands and Watercourses Act] is contained in . . . §§ [22a-28] through 22a-45, inclusive. Under the act the [commissioner of environmental protection] is charged with the responsibility of protecting inland wetlands and watercourses by . . . regulating activity which might have an adverse environmental impact on such natural resources." (Internal quotation marks omitted.) *River Bend Associates, Inc.* v. *Conservation & Inland Wetlands Commission*, 269 Conn. 57, 71, 848 A.2d 395 (2004). "The designated wetlands agency of each municipality is expressly authorized to promulgate regulations that are necessary to protect the wetlands and watercourses within its territorial limits. General Statutes 22a-42 (c)." (Internal quotation marks omitted.) *Mario* v. *Fairfield*, 217 Conn. 164, 168–69, 585 A.2d 87 (1991). In considering an application to engage in a regulated activity, it is the impact on the regulated area that is pertinent, not the environmental impact in general. *River Bend Associates, Inc.* v. *Conservation & Inland Wetlands Commission*, supra, 72.

In order to protect the wetlands and watercourses, local agencies are authorized not only to regulate activities occurring within the wetlands and watercourses, but also are authorized to promulgate regulations for activities within areas around wetlands and watercourses if those regulations are "in accordance with the provisions of the inland wetlands regulations adopted by such agency related to the application for, and approval of, activities to be conducted in wetlands or watercourses," and "apply only to those activities which are likely to impact or affect wetlands or watercourses." General Statutes § 22a-42a (f). An impact on the wetlands or watercourses that is speculative or not adverse is an insufficient ground for denial of a wetlands

application. *River Bend Associates, Inc.* v. *Conservation & Inland Wetlands Commission,* supra, 269 Conn. 79 n.28.

In denying, in part, the plaintiffs' application, the commission made several findings. It found that "these structures pose a substantial intrusion into the wetland setback area by encroaching 43' (more than 80%) into the 50' setback. The proposed construction introduces a new, intense use directly adjacent to the wetlands and introduces risks, including but not limited to the use and dispersion of chemicals adjacent to the wetlands for the treatment of the pool and the cleaning of the pool structure; substantial displacement of soil in the protected area; and loss of lawn area regarded as an important component of the buffer." Furthermore, the commission considered the testimony of the plaintiffs' expert, Michael Fishman, a certified professional wetland scientist and wildlife biologist, regarding the use of infiltrators to compensate for the loss in filtration and percolation posed by the construction activity. It concluded that although it recognized and appreciated that such technology might prove to mitigate soil displacement as well as loss in filtration and percolation and other intrusions into the wetland buffer, it rejected the technology and found that "[i]nfiltrators that are inundated with groundwater during wet seasons would not, in the [c]ommission's view, offset the impacts posed by the construction." In addition, the commission found that the proposed construction "would put additional pressure on the resource's capacity to facilitate drainage and serve as flood control," "poses potential damage from erosion, flooding and pollution, and subsequent impairment of economic and aesthetic values of downstream neighbor's properties," and "poses a threat to water quality by proposing an increase of impervious surface area to 17%." Furthermore, the commission found that "the construction does propose such an

impact that would limit future options that would benefit the wetlands, its long-term productivity, and [flood plain] area." It also found that "the construction poses an irretrievable commitment of the wetland setback area which serves to protect and buffer the wetlands and Stony Brook." Moreover, the commission found that "there is no 'hardship' or necessity, to justify the proposed [in-ground] pool's extreme proximity and significant potential for impact to the wetlands."

Upon reviewing the commission's findings, the court dismissed the plaintiffs' appeal because it determined, inter alia, that there was "significant evidence" in the record to support the commission's denial of the application for a permit to conduct regulated activity in the upland review area on the basis of the proposed activities significant impact on the wetlands. Specifically, the court found that the record revealed "substantial support" for the commission's determinations that the proposed construction significantly would impact the wetlands because it would result in an increase of impermeable surface area on property already plagued by flood problems and would have an adverse impact on the water quality. In making these determinations the court relied on testimony from the public hearing on the permit, as well as a letter from a commission staff member, Nancy H. Sarner, to the plaintiffs' attorney.

A review of the record reveals that the plaintiffs' expert, Fishman, provided the commission with an environmental impact report, a drainage report and additional information regarding the application as requested by the commission. In addition, a public hearing was held at which Fishman testified about the various reports he had prepared and responded to questions posed by the commission and the adjacent property owners. Fishman's reports and testimony indicated that there would not be a likely adverse impact on the wetlands and watercourses from the construction of the

in-ground swimming pool and related features in the upland review area.[6]

The public also was invited to voice concerns and to ask questions during the public hearing on the application. Several property owners adjacent to the plaintiffs' property voiced a general concern about flooding in the area. Mostly, the adjacent property owners were concerned about the flooding that already plagued the area and how it could be remediated. They did not express concerns with the construction of the pool itself. One neighbor was concerned that the pool would displace wetland soil that serves to absorb excess water and would thereby decrease the soil's ability to assist with flood control.[7] Another neighbor was concerned with flooding in the area and inquired about the frequency with which the pool would need to be drained and how that might affect flooding in the wetlands and watercourses. In response, Fishman explained that there is no scheduled frequency for draining pools and

---

[6] Specifically, Fishman's report indicated that there would be a "slight, but insignificant increase in runoff from the pool terrace and pool house roof," and that any runoff would be absorbed by the pool, lawn and restored riparian corridor. The proposed plan would improve the functional value of the wetland soils, and "will filter runoff better for better water quality." In addition, "[s]ince the proposed pool, terrace, and pool shed will have minimal impacts at most, this proposed project will result in a net improvement of ecological conditions on the site." Furthermore, the report indicates that "[t]he proposed development activities on the parcel pose minimal impacts that are confined to upland areas immediately adjacent to the existing house and driveway, minimizing the area of proposed use and maximizing its distance from the truly valuable resource on the property, Stony Brook," and that "[t]he proposed activities will have little or no direct or indirect impact on wetlands on the site and no adverse impact to Stony Brook." Moreover, the report indicates that "[a]s proposed, the development activities on this site will result in no long term or permanent adverse impacts to the regulated wetland area" and that "this project will not have significant net adverse impacts to wetlands or other natural resources on the property."

[7] Fishman's report indicated that no wetland soil would be disturbed or displaced during construction of the pool in the upland area.

that it is advisable to keep them full unless the pool requires maintenance. Further, he explained that if the proposed pool had to be drained, the protocol would be to discontinue the use of chemicals for one week prior to draining it, in which time the chlorine and chemicals will dissipate, and that a tarp would be used to drain the water so as to prevent soil erosion. Additionally, he explained that the wetland soil would absorb a majority of the water before it would reach the watercourses. Alternatively, Fishman testified that if the proposed pool required draining, the water could be pumped into a truck and carried away.

The record also contains a letter from Sarner expressing a concern about the impact on drainage and water quality due to the increase in impervious surface area from the construction of the pool, and requesting an updated calculation on the proposed impervious surface area that included the pool and related features. Fishman provided this information to Sarner and indicated that the construction of the pool would be well outside the 100 year flood plain and would therefore not interfere with the flood plain's storage capacity and that the increase in impervious surface area would not have any significant impact on the peak rate of runoff.

The court and the commission refer to the Sarner letter and the neighbors' testimony at the public hearing to support the commission's determination to deny in part the plaintiffs' application. Specifically, the commission found that water quality has been shown to become impacted as the size of the impervious area on a property increases and that there was a risk that chemicals would be dispersed in the upland review area. Our review of the record indicates that there is no evidence to support the finding that an impact on water quality could result from the construction of the pool and that there is no evidence to support the finding that an adverse impact on the wetlands and watercourses was

likely to result from a risk of chemicals being dispersed in the upland review area. The Sarner letter and the testimony of the neighbors are, instead, unsubstantiated concerns about *possible* impacts to the wetlands and the watercourses. In contrast, the commission was presented with evidence from Fishman that no significant impact to the wetlands or watercourses would occur from the construction activities in the upland area. Although the commission is the arbiter of the credibility of witnesses and was, therefore, not bound to accept Fishman's testimony and reports; *Toll Bros., Inc.* v. *Inland Wetlands Commission,* supra, 101 Conn. App. 600; the conclusions he provided were the only factually based conclusions before the commission substantiated by evidence in the record. Therefore, without his testimony and reports there would be no substantial evidence before the commission regarding any actual impacts to the wetlands and watercourses from the proposed construction. Because concerns and potential impacts are not substantial evidence of a likely adverse impact on the wetlands and watercourses, the Sarner letter and the concerns of the plaintiffs' neighbors were insufficient evidence to support the commission's denial of the plaintiffs' application. See id. ("[e]vidence of general environmental impacts, mere speculation, or general concerns do not qualify as substantial evidence" [internal quotation marks omitted]).

Additionally, although the commission found that the construction posed "a potential [for] damage from erosion, flooding and pollution, and subsequent impairment of economic and aesthetic values of downstream neighbors' properties," a finding of potential generalized impacts is insufficient to support a denial of an application for a permit to conduct a regulated activity. The commission must make a determination that the activity will have a likely adverse impact on the wetlands and watercourses and that finding must be supported by substantial evidence in the record. See *River*

*Bend Associates, Inc.* v. *Conservation & Inland Wetlands Commission,* supra, 269 Conn. 74, 79 n.28.

Because we must uphold the commission's decision if an examination of the record discloses evidence that supports any one of the reasons given, we next address the remainder of the commission's findings. We conclude that the remainder of the commission's findings concern potential impacts to the wetlands and watercourses and potential impacts to the upland review area rather than findings of likely adverse impacts on the wetlands or watercourses. Such findings are insufficient to deny an application for a permit to conduct a regulated activity.

In accordance with the commission's regulations, the area of the plaintiffs' property that is within fifty feet of the wetlands and watercourses, referred to by the commission as the "buffer," "set back area," "protected area" and "regulated area," is not a protected or regulated area[8] but rather an upland review area where certain activities may be regulated because of the activities' likely impact or effect on the nearby wetlands and watercourses. See General Statutes § 22a-42a (f); see also *Queach Corp.* v. *Inland Wetlands Commission,* 258 Conn. 178, 199, 779 A.2d 134 (2001) ("[T]he upland review process does not forbid activity based solely on proximity to wetlands. Rather, the upland review process merely provides a basis for determining whether activities will have an adverse impact on the adjacent wetland or watercourse, and if necessary, regulating them."). In order for the commission to deny the plaintiffs an application for a permit to conduct regulated activity in the upland review area, it must

---

[8] In accordance with § 2.1 (z) of the Darien inland wetlands and watercourses regulations, regulated area means any inland wetland or watercourse, as defined in these regulations. The area where the plaintiffs proposed to build is not a wetland or watercourse. As such, it is not a regulated area.

determine that the proposed activity will have a likely adverse impact on a wetland or watercourse, and such a determination must be supported by substantial evidence in the record. See *River Bend Associates, Inc.* v. *Conservation & Inland Wetlands Commission*, supra, 269 Conn. 74 ("[t]he sine qua non of review of inland wetlands applications is a determination whether the proposed activity will cause an adverse impact to a wetland or watercourse") and 79 n.28.

The commission found that the construction would pose a substantial intrusion into the upland area, would introduce a new and intense use and risks adjacent to the wetlands, and would cause substantial displacement of soil and loss of lawn in the upland area. It failed to make any findings regarding whether these potential intrusions on the upland review area would have a likely adverse impact on the wetlands and watercourses, nor is there any evidence in the record to support a likely adverse impact on the wetlands and watercourses from these potential intrusions.[9] The commission also found that although the infiltrators might prove to mitigate soil displacement as well as loss in filtration and percolation in the upland review area, it rejected the technology and found that, in its view, the infiltrators would not offset the impacts posed by the construction. Again, the only impacts the commission had identified were those on the upland review area. Impacts on the upland review area are not sufficient to deny an application for a permit to conduct a regulated activity. Finally, the commission found that "the construction would pose such an impact that would limit future options that would benefit the wetlands, its long-term productivity and [flood plain] area" without articulating what impact it posed to the wetlands, and found

---

[9] In fact, the only evidence before the commission regarding actual impacts on the wetlands and watercourses was the evidence from Fishman that the construction would not have a likely adverse impact on the wetlands and watercourses. See footnote 6 of this opinion.

that the construction "poses an irretrievable commitment of the wetland setback area" without articulating how the commitment of the wetland setback area would impact the wetlands and Stony Brook. Moreover, the commission determined that the proposed activities presented a "significant potential for impact to the wetlands." A finding that there is a significant potential for an impact to the wetlands is insufficient to deny an application for a permit to conduct a regulated activity. The impact on the wetlands and watercourses must be adverse and must be likely. See *River Bend Associates, Inc.* v. *Conservation & Inland Wetlands Commission*, supra, 269 Conn. 74, 79 n.28.

Because the commission's findings regarding potential impacts to the wetlands and watercourses and potential impacts on the upland review area were not sufficient to deny the plaintiffs' application and because there is no evidence in the record to support a likely adverse impact on the wetlands and watercourses as a result of the proposed construction in the upland area, the commission abused its discretion when it denied that part of the plaintiffs' application for a permit to construct an in-ground swimming pool and related features. The court should have sustained the plaintiffs' appeal.

"[N]ormally, [w]hen agency action is overturned . . . because of invalid or insufficient findings, we have held that a court must ordinarily remand the matter under consideration to the agency for further consideration. . . . A direct order to the commission is therefore legally unwarranted and the case must be remanded to the commission for further consideration of any conditions that should be attached to the issuance of the permit as supported by evidence in the present record. . . . An exception to that rule, however, exists when it appears as a matter of law that there is only one single conclusion that the [agency] could reasonably

reach, [and therefore] the trial court can direct the agency to take the action on remand." (Internal quotation marks omitted.) *Toll Bros., Inc.* v. *Inland Wetlands Commission*, supra, 101 Conn. App. 602.

After a full hearing on the matter in which evidence that was requested was provided, the record fails to reflect any evidence that would show that the construction of the in-ground swimming pool and related features would have a likely adverse impact on the wetlands and watercourses. Because the commission may deny an application for a permit to conduct a regulated activity only on the basis of a likely adverse impact on the wetlands and watercourses, without any evidence in the record to support such a finding in this case, the commission should have granted the part of the plaintiffs' application seeking permission to construct an in-ground swimming pool and related features. In addition, on the state of the current record, there is no evidence of even a minimal intrusion on the wetlands and watercourses. As such, there are no conditions or modifications that the commission could require, and we are convinced that, as a matter of law, there is only one single conclusion that the commission reasonably could have reached. The case, therefore, must be remanded to the trial court with direction to render judgment sustaining the plaintiffs' appeal and directing the commission to grant the part of the plaintiffs' application that sought a permit to construct an in-ground swimming pool and related features. Cf. *Executive Television Corp.* v. *Zoning Board of Appeals*, 138 Conn. 452, 457, 85 A.2d 904 (1952) ("Having established that there was no basis upon which the defendant could have determined that the safety of the public would be unduly imperiled, the plaintiff had met the full burden imposed upon it. . . . The appeal should have been sustained, and, since upon the record before the court the only reasonable conclusion is that the plaintiff was

entitled to receive a certification of approval, the defendant should have been directed to issue it.").

The judgment is reversed and the case is remanded to the trial court with direction to render judgment sustaining the plaintiffs' appeal and directing the commission to grant that part of the plaintiffs' application for a permit to construct an in-ground swimming pool, spa, pool house-storage shed and surrounding terrace.

In this opinion the other judges concurred.